IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JENNIFER ADAMS, AS NEXT FRIEND OF STEPHANIE STAUBITZ, | § § § § § § § § § § § § § | |
| *Plaintiff,* | | SA-24-CV-00634-FB |
| vs. | | |
| MAYRA CAVAZOS, RACHAEL VASQUEZ, JULIA MENDOZA, AMBER RICE, BEXAR COUNTY, TEXAS, | | |
| *Defendants.* | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant Bexar County's Motion to Dismiss Plaintiff's Original Complaint [#11]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#9]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Bexar County's motion to dismiss be **DENIED**.

## I.   Background

This civil rights action is brought on behalf of Stephanie Staubitz by Plaintiff Jennifer Adams, as next friend. Staubitz is a resident of a group home within Bexar County, Texas. (Compl. [#1], ¶¶ 1, 17.) She "had been a resident of group homes for decades prior [to her arrest] due to her intellectual and developmental disabilities." (Compl. [#1], ¶ 16.) She was arrested on July 6, 2022, for allegedly assaulting another resident of the group home. (Compl. [#1], ¶ 16.)

1

After she was released approximately two weeks later, her case manager summoned emergency medical services; she was taken to the hospital and received treatment for a broken leg and dehydration. (Compl. [#1], ¶¶ 16, 18, 22, 27, 30.) Plaintiff, seeking damages, brings a claim against Bexar County and against four deputies (the "Deputy Defendants") for violation of the Fourteenth Amendment under 42 U.S.C. § 1983, a Rehabilitation Act of 1973 claim against Bexar County, and an Americans with Disabilities Act ("ADA") claim against Bexar County. The Deputy Defendants have answered and not moved to dismiss. Defendant Bexar County filed a Motion To Dismiss Plaintiff's Original Complaint [#11] for failure to state a claim. Plaintiff responded [#17], and Bexar County replied [#19]. The motion is therefore ripe for the Court's review.

## II.  Legal Standard

Defendant Bexar County moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

Generally, in deciding a motion to dismiss, a court may not look beyond the four corners of the plaintiff's pleadings without converting the motion to a motion for summary judgment. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); Fed. R. Civ. P. 12(d). The Court may, however, consider documents attached to the motion to dismiss as long as they are "central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### III. Allegations in the Complaint

Stephanie Staubitz, a Bexar County resident, has lived in group homes "for decades" due to her intellectual and developmental disabilities. (Compl. [#1], ¶¶ 1, 16.) After being arrested on July 6, 2022, for allegedly assaulting another resident of the group home, she was brought to the Bexar County Sheriff's Office ("BCSO") jail. (Compl. [#1], ¶¶ 16, 18.) The BCSO deputies were aware of her disabilities. (Compl. [#1], ¶¶ 17–20.) A screening form completed at the time of her booking indicated that she was "PROBABLE" for intellectual and developmental disabilities. (Compl. [#1], ¶¶ 19–20.) Jail staff noted the next day that she had a "'strange' demeanor." (Compl. [#1], ¶ 21.)

3

According to the Complaint, the charge against Staubitz was dismissed on July 19, 2022. (Compl. [#1], ¶ 22.) She was thereafter transported by Deputy Cavazos to the "release window." (Compl. [#1], ¶ 23.) It then "became apparent to Deputy Cavazos that Ms. Staubitz may have sustained injury when [she] had 'lost her balance and fallen.'" (Compl. [#1], ¶ 23.) The Complaint alleges that Deputy Cavazos stated to Deputy Vasquez that Staubitz had "dropped her weight and refused to walk" and was "mumbling and speaking without making sense." (Compl. [#1], ¶ 24.)

Approximately four hours later, Deputies Mendoza and Rice "encountered [Staubitz] as she was laying on the floor outside of cell #18." (Compl. [#1], ¶ 25.) They retrieved a wheelchair for her and allegedly discussed that she had been "throwing herself on the floor since she entered the facility, and that there was nothing wrong with her."[1] Though the chronology of the events in the Complaint is not entirely clear, it appears that she was evaluated by medical staff and that at times she walked on her own, while at other times she used a wheelchair. (Compl. [#1], ¶¶ 25–26.) Staubitz was then released to a driver for the Alamo Area Council of Governments (AACOG). (Compl. [#1], ¶ 26.)

Upon transportation to her group home, her case manager allegedly called for emergency medical services because she "was pale, lips blue, [had a] swollen leg . . . and [was] dehydrated." (Compl. [#1], ¶ 30.) The AACOG driver allegedly also "clearly observed that Ms. Staubitz needed medical help." (Compl. [#1], ¶ 60.) At the hospital, it was determined that she had a broken leg. (Compl. [#1], ¶ 30.) She had screws put into her leg and required blood transfusions. (Compl. [#1], ¶ 27, 30.)

---

[1] According to Defendant Bexar County, it was medical staff who made this statement to the deputies. (Mot. to Dismiss [#11], ¶ 13 n.1.)

According to the Complaint, after this incident, an employee of AACOG made a complaint to the BCSO, and an inspector for the Texas Commission on Jail Standards asked BCSO to investigate the allegations (Compl. [#1], ¶¶ 27, 29.) Plaintiff alleges that Captain Charles Cagle wrote in an "After Action Report"[2] that multiple deputies tried to assist Staubitz in standing up, but she "was exhibiting passive resistant behavior by continuing to drop her weight and did not provide any assistance on her own to attempt to stand up. [Her] irascibility increased as staff attempted to assist her to her feet." (Compl. [#1], ¶ 32.) He ultimately determined that, after "speaking with officers, collecting reports and reviewing surveillance footage," it is unknown when and how Staubitz injured her leg. (Compl. [#1], ¶ 33.) The report ends with a recommendation:

> Recommendation: In the future we will have Mental Health staff present when dealing with inmates suffering from intellectual or developmental disabilities who are exhibiting this type of behavior as well as call a code one to elicit medical response if they decline to do so prior to walking someone out the door and handing them over to the receiving agency.

(Compl. [#1], ¶ 34.)

Plaintiff alleges that Sheriff Salazar, as the final policymaking authority for Bexar County, ratified the deliberately indifferent policies of (1) "[n]ot having mental health staff present when dealing with inmates suffering from intellectual or developmental disabilities who are exhibiting behavior consistent with their disabilities" and (2) "[n]ot having a policy to call a code one to elicit medical response prior to walking someone out the door whom they have observed may be injured." (Compl. [#1], ¶¶ 67, 70.) She further asserts that the Deputy Defendants, with deliberate indifference, acted in conformity with these policies, which led to the alleged constitutional violations. (Compl. [#1], ¶¶ 63, 69.)

---

[2] Bexar County attached a copy of this report [#11-1] to its motion to dismiss, and it is consistent with these allegations.

## IV.  Analysis

Defendant Bexar County moves to dismiss Plaintiff's Section 1983 claim on the grounds that she does not plausibly allege a violation of a constitutional right or plausibly allege that Bexar County was deliberately indifferent to the risk their policies or lack of policies would result in constitutional violations. Relatedly, it argues that Captain Cagle's policy recommendations cannot be used to support *Monell* liability under Federal Rule of Evidence 407. Bexar County also moves to dismiss Plaintiff's ADA and Rehabilitation Act claims on the basis that Plaintiff failed to allege facts showing that a Bexar County employee denied Staubitz medical care. The Court should deny Bexar County's motion to dismiss.

### A.  **Plaintiff's Section 1983 Claim Against Bexar County**

Section 1983 prohibits "person[s]" acting under the color of law from depriving another of any "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A pretrial detainee who asserts a challenge concerning her confinement under § 1983 invokes the Fourteenth Amendment. *See Cadena v. El Paso City*, 946 F.3d 717, 727 (5th Cir. 2020); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). The State owes pretrial detainees the duty to provide for basic human needs, which includes a duty to provide adequate medical care and to protect them from harm. *Hare*, 74 F.3d at 650. Claims that a county is liable for the deprivation of a pretrial detainee's Fourteenth Amendment rights are characterized either as claims regarding (1) a condition of confinement or (2) an episodic act or omission. *Id.* at 644–45.

Plaintiff is bringing solely an episodic-act-or-omission claim. (Compl. [#1], ¶¶ 39–42.) To sufficiently establish municipal liability for an episodic-act-or-omission claim at the motion-to-dismiss stage, a plaintiff must plausibly allege: "(1) that the municipal employee violated the

pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference."[3] *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (citations omitted). The policy may be attributed to a municipality through the identification of a final policymaking authority. *Id.* at 637. To be subjectively deliberately indifferent, the officer must have "know[n] of and disregard[ed] an excessive risk to inmate health or safety," though knowledge of such a risk "may be inferred if the risk was obvious." *Est. of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 464 (5th Cir. 2015) (citing *Est. of Henson v. Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011)); *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 842–43 (1994)). To establish that a violation resulted from a county policy or custom adopted and maintained with objective deliberate indifference, a plaintiff must point to either "written policy statements, ordinances, or regulations" or "a widespread practice that is so common and well-settled as to . . . fairly represent [ ] municipal policy that was the moving force behind the violation." *Cadena*, 946 F.3d at 728 (internal quotations omitted) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)).

First, Plaintiff asserts that Staubitz's Fourteenth Amendment[4] rights were violated by Bexar County jail officials. She particularly points to the "right to reasonably safe conditions of

---

[3] The first element of this test establishes whether the plaintiff's rights under the Due Process Clause have been violated; the second element establishes whether the municipality may be held liable for that violation. *Hare*, 74 F.3d at 649 n.4.

[4] The Section 1983 cause of action section regarding Bexar County is titled: "Fourth Amendment § 1983 *Monell* Claim Against [] Bexar County, Texas." (Compl. [#1], at 10.) Considering this is the only time the Complaint references the Fourth Amendment, and the rest of the Complaint discusses the Fourteenth Amendment, the undersigned assumes the word "Fourth" was a typo.

confinement," "right to receive proper medical services and medications for any serious medical conditions," and "right to be free from cruel and unusual punishment." (Compl. [#1], ¶ 56.) These are clearly established constitutional rights.[5] *See Hare*, 74 F.3d at 650; *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976); *Est. of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015).

Bexar County argues that she fails to plausibly allege that Staubitz's right to medical care was violated, as she was seen by medical personnel multiple times during her period of custody. (Mot. to Dismiss [#11], ¶¶ 12–13.) Bexar County points to the Complaint itself including allegations of her receiving medical care.[6] (Mot. to Dismiss [#11], ¶ 13; Complaint [#1], ¶¶ 26, 32.) For instance, medical staff purportedly evaluated Staubitz and cleared her to be released. (Compl. [#1], ¶ 26; Facility Incident Report, Ex. B [#11-2].)[7] As Plaintiff correctly notes in her response, however, the undersigned is required to view the pleadings in the light most favorable to Plaintiff. If it is true that Staubitz was seen by a nurse, soon after released by jail officials, and was then almost immediately taken to the hospital for a broken leg and dehydration, it is a reasonable interference that the jail officials engaged in "conduct that would clearly evince a

---

[5] The standard for constitutional violations for pretrial detainees under the Fourteenth Amendment is the "same as that for a prisoner under the Eighth Amendment." *Cadena*, 946 F.3d at 727 (citing *Garza*, 922 F.3d at 634).

[6] Bexar County in its Reply [#19] adds the additional argument that Staubitz never "expressed that she was having an emergency." (Reply [#19], at 3.) Given Staubitz's intellectual and developmental disabilities, the undersigned does not find her alleged failure to ask for help meaningful.

[7] The Complaint references the Facility Incident Report multiple times. (Compl. [#1], ¶¶ 23, 25.) This report appears to be the source of Plaintiff's information that Staubitz was seen falling down. The report therefore may be considered without converting this motion to dismiss into a motion for summary judgment, as it is central to Plaintiff's claim and is referenced in the Complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

wanton disregard for any serious medical needs." *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001)). Thus, Plaintiff has sufficiently alleged that Staubitz's clearly established constitutional rights were violated.

Next, Plaintiff plausibly alleged that the BCSO jailers were subjectively deliberately indifferent to Staubitz's serious medical needs and safety. Staubitz is a woman with intellectual and developmental disabilities, such that she has lived in a group home "for decades." (Compl. [#1], ¶ 16.) Plaintiff claims that the jailers knew of her disabilities when she was booked at the jail. (Compl. [#1], ¶¶ 17–20.) Approximately two weeks later, on the date she was meant to be released from the jail, multiple deputies allegedly noted that she "refused to walk" after finding her "laying on the floor outside of" a cell. (Compl. [#1], ¶¶ 24–25.) The Complaint alleges that a deputy reported Staubitz was "mumbling and speaking without making sense." (Compl. [#1], ¶ 24.) Though it appears Staubitz was able to walk at times, the deputies got a wheelchair for her. (Compl. [#1], ¶¶ 25–26.) After being seen by medical personnel, the deputies "completed the release process, releasing her to a driver for AACOG (Alamo Area Council of Governments)." (Compl. [#1], ¶ 26.)

The AACOG driver and her case manager—two non-medically trained individuals— "clearly observed that Ms. Staubitz needed medical help." (Compl. [#1], ¶ 60.) Her case manager called for emergency medical services. (Compl. [#1], ¶¶ 30, 60.) Plaintiff pleads that Staubitz "was in a severely compromised state and was dehydrated, requiring transport to the hospital for a broken leg, screws in her leg to repair the injury, and blood transfusions." (Compl. [#1], ¶ 27.) She alleges that in a report written by Captain Charles Cagle, Bexar County could not determine how or when Staubitz injured her leg. (Compl. [#1], ¶ 33.)

9

Taking all allegations as true, the Court finds that—based on Staubitz's disabilities, her inability to stand and being found lying on the floor, and the accurate and almost immediate observation by two laypeople that she needed emergency medical care—the Court may make the reasonable inference that the BCSO deputies knew of and disregarded the severe risk to Staubitz's health. The fact that the risk was severe may be inferred based on her allegations that her driver and case manager believed that she clearly needed medical care. *See Gobert*, 463 F.3d at 345 n.12 (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2022)) ("A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required.") Thus, Plaintiff has sufficiently pleaded the first element of an episodic-act-or-omission claim.

As to the second element—that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference by a final policymaking authority—Plaintiff has also met her pleadings burden. She pleads that the Deputy Defendants acted in adherence with Bexar County's policies when they allegedly violated Staubitz's rights. (Compl. [#1], ¶ 69.) She goes further than merely alleging vague, conclusory policies that resulted in her injuries; rather, she describes a specific policy with facts, and it is clear how those alleged policies directly led to her injuries. *See Henderson v. Harris Cnty. Tex.*, 51 F.4th 125, 131 (5th Cir. 2022). Plaintiff alleges that Bexar County has the policies of (1) "[n]ot having mental health staff present when dealing with inmates suffering from intellectual or developmental disabilities who are exhibiting behavior consistent with their disabilities" and (2) "[n]ot having a policy to call a code one to elicit medical response prior to walking someone out

10

the door whom they have observed may be injured."[8] (Compl. [#1], ¶ 67.) She alleges that, had the jail trained its staff to properly communicate with Staubitz and instituted other safeguards to ensure she received necessary medical care, Staubitz would not have been released from the jail needing emergency medical services. (Compl. [#1], ¶¶ 44–47, 67.) Plaintiff further asserts that Bexar County "consistently reviewed such policies and found no issue with them," and thus "encouraged such conduct, as such conduct was also participated in by the Sheriff, its policymaker." (Compl. [#1], ¶ 68.)

Plaintiff has pleaded sufficient factual details regarding Bexar County's policies and how they resulted in the alleged violations of her rights. Additionally, the fact that Plaintiff alleges *multiple* jail officials participated in the violation of Staubitz's constitutional rights makes it more plausible that they were acting in response to Bexar County policies, rather than her injury being caused by one rogue actor. While these allegations as to Bexar County's policies may ultimately not be supported by the evidentiary record, they are sufficient to survive a motion to dismiss and proceed to discovery. *See Colle v. Brazos Cnty. Tex.*, 981 F.2d 237, 246 (5th Cir. 1993) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)) (reversing a district court's dismissal of § 1983 claims against a county and noting that "the facts as presently pleaded only set the stage for further discovery").

Plaintiff must also plead sufficient facts such that it is a reasonable inference that the above-alleged policies were adopted or maintained with objective deliberate indifference. She

---

[8] In making these allegations, Plaintiff points out that Captain Cagle made certain policy recommendations in his After Action Report in support of her argument that Bexar County's existing policies are constitutionally inadequately. Bexar County objects that the After Action Report is inadmissible under Fed. R. Evid. 407. Whether the report is inadmissible under Rule 407 is an issue that may need to be decided at a motion for summary judgment or at trial, but at the pleadings stage, the Court need not even consider the report, as Plaintiff's pleadings regarding the policies are adequate.

claims that Sheriff Salazar, as the final policymaking authority, knew of and ratified these policies, and knew that the policies "made it highly likely that such constitutional violations as those previously described [in the Complaint] would occur." (Compl. [#1], ¶ 74.) This is enough, as it is not "beyond doubt that [she] cannot prove a plausible set of facts that support the claim and would justify relief." *See Twombly*, 550 U.S. at 570. Plaintiff's allegations that Bexar County lacked staff trained to manage detainees with intellectual and developmental disabilities, in addition to not requiring medical attention for potentially injured detainees before release, gives rise to a reasonable inference that an obvious risk to detainees' health and safety would be created, and therefore an obvious risk to their constitutional rights would be created as well. *See Colle*, 981 F.2d at 246 (explaining that the "ultimate jury question" for whether a municipality was deliberately indifferent "is whether [the county] adopted policies creating an obvious risk that pretrial detainees' constitutional rights would be violated"). The Court should therefore deny the motion to dismiss Plaintiff's § 1983 claim against Bexar County.

**B.      Plaintiff's Rehabilitation Act Claim and ADA Claim Against Bexar County**

Plaintiff pleads that, while in the custody of Bexar County, Staubitz suffered discrimination on the basis of her disability in violation of both the Rehabilitation Act and the Americans with Disabilities Act. She properly states a claim of disability discrimination under each statute, and Bexar County's motion to dismiss these claims should be denied.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Public entities" include local governments and their

instrumentalities, such as jails. *Id.* §§ 12131(1)(A–B); *Cadena*, 946 F.3d at 723. Section 504 of the Rehabilitation Act of 1973 provides, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

The elements necessary to plead a cause of action of disability discrimination under the Rehabilitation Act and the standards governing such claims are "operationally identical" to those required to state a claim under the ADA. *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004). Under both statutes, to plead a prima facie case of disability discrimination, a plaintiff must plead (1) she is a qualified individual with a disability; (2) she is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the entity; and (3) the discrimination was due to her disability.[9] *Cadena*, 946 F.3d at 723; *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017) (quoting *Melton*, 391 F.3d at 671–72). "The only material difference between the two provisions lies in their respective causation requirements." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). Under the Rehabilitation Act, the plaintiff must establish that disability discrimination was the sole reason for the exclusion or denial of benefits; under the ADA, discrimination need not have been the sole reason. *Id.*

---

[9] Medical services provided by jails fall within the definition of "services" under the ADA and Rehabilitation Act. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

Plaintiff plausibly alleges that Staubitz is an individual with a disability and that Bexar County receives federal assistance. (Compl. [#1], ¶ 78.) Bexar County does not contest either of these elements. Staubitz has lived in group homes for decades due to her intellectual and developmental disabilities, and her disabilities substantially limit her major life activities. (Compl. [#1], ¶¶ 16, 78.)

As to the second element, Plaintiff alleges that Bexar County discriminated against Staubitz by "failing to properly plan for, coordinate, respond to, and effectuate jailer contact with [her] . . . and failing to accommodate properly and safely [her] disabilities." (Compl. [#1], ¶¶ 79–80.) For example, one of the Deputy Defendants allegedly stated that Staubitz, after falling, "was mumbling and speaking without making sense." (Compl. [#1], ¶ 24.) Despite this fact, and the fact that they already knew she had disabilities, Plaintiff claims that Staubitz was not evaluated by a mental health professional. She further claims that Bexar County "failed to ensure appropriate mental health treatment" was provided for inmates with disabilities like Staubitz's and "failed to ensure she received appropriate medical care prior to her release." (Compl. [#1], ¶ 85.) Lastly, Plaintiff alleges that Bexar County denied Staubitz services that they made available to non-disabled individuals. (Compl. [#1], ¶ 88.)

In its motion to dismiss, Bexar County argues that Plaintiff failed to allege facts showing that any Bexar County employee engaged in any act to deny Staubitz medical care. Its sole argument is that the Bexar County deputies "notified medical personnel for the purposes of securing a medical evaluation" and that she does not allege "the medical personnel responsible for evaluating Staubitz . . . are employees of Bexar County." (Mot. to Dismiss [#11], ¶ 17.)

Bexar County's argument fails. Plaintiff has made concrete, non-conclusory allegations that—despite Staubitz's known disabilities—the jail did not provide her with appropriate

14

medical or mental health treatment and did not have staff who were properly trained to communicate with her. At this stage of the litigation, that is enough to satisfy the second element of her disability discrimination claim.

The third element is that the alleged discrimination occurred because of Staubitz's disability—either solely due to her disability under the Rehabilitation Act or at least in part under the ADA. Plaintiff alleges that that the discrimination occurred "by virtue of her disabilities." (Compl. [#1], ¶¶ 79–80, 84.) Notably, Bexar County does not dispute that Plaintiff has sufficiently pleaded this element. Plaintiff therefore has sufficiently pleaded that Staubitz was discriminated against under the Rehabilitation Act and the ADA. Bexar County's motion to dismiss these claims should be denied.

## V. Conclusion, Recommendation, & Order

Having considered Bexar County's Motion to Dismiss Plaintiff's Original Complaint [#11], the response and reply thereto, the pleadings, and the governing law, the undersigned **RECOMMENDS** that Defendant Bexar County's Motion to Dismiss Plaintiff's Original Complaint [#11] be **DENIED**.

## VI. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections are limited to no more than 20 pages unless leave of court is granted. The party shall file the

objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

    SIGNED this 4th day of March, 2025.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE